[Cite as *Ohio Trucking Assn. v. Charles,* 134 Ohio St.3d 502, 2012-Ohio-5679.]

OHIO TRUCKING ASSOCIATION ET AL., APPELLEES, *v*. CHARLES, DIR., ET AL.,
APPELLANTS.

[Cite as *Ohio Trucking Assn. v. Charles,* **134 Ohio St.3d 502, 2012-Ohio-5679.**]

*Constitutional restriction on use of fees relating to registration, operation, or use*
*of vehicles—Ohio Constitution, Article XII, Section 5a—Fees for*
*registrar's abstracts of driving records not subject to restriction.*

(No. 2011-1757—Submitted July 11, 2012—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-673, 2011-Ohio-4361.

_____

**PFEIFER, J.**

{¶ 1} The court of appeals concluded that fees charged for the production of certified abstracts of driving records are related to the "registration, operation, or use of vehicles on public highways" within the meaning of the Ohio Constitution, Article XII, Section 5a. We conclude to the contrary and reverse the judgment of the court of appeals.

**Background**

{¶ 2} Plaintiffs/appellees, the Ohio Trucking Association, the Ohio Newspaper Association, the Ohio Coalition for Open Government, the Professional Insurance Agents of Ohio, and the Ohio Insurance Institute, filed a complaint for injunctive relief and declaratory judgment, challenging the constitutionality of R.C. 4509.05(A). Am.Sub.H.B. No. 2 was enacted on April 1, 2009; it amended R.C. 4509.05, which now states:

(A) Upon request, the registrar of motor vehicles shall search and furnish a certified abstract of the following information with respect to any person:

(1) An enumeration of the motor vehicle accidents in which such person has been involved * * *;

(2) Such person's record of convictions for violation of the motor vehicle laws.

(B) The registrar shall collect for each abstract a fee of five dollars.

(C) * * *

Of each five-dollar fee the registrar collects under this division, the registrar shall pay two dollars into the state treasury to the credit of the state bureau of motor vehicles fund * * *, sixty cents into the state treasury to the credit of the trauma and emergency medical services fund * * *, sixty cents into the state treasury to the credit of the homeland security fund * * *, thirty cents into the state treasury to the credit of the investigations fund * * *, one dollar and twenty-five cents into the state treasury to the credit of the emergency management agency service and reimbursement fund * * *, and twenty-five cents into the state treasury to the credit of the justice program services fund * * *.

{¶ 3} The plaintiffs asserted that the amended statute violates Article XII, Section 5a of the Ohio Constitution, which states:

No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways * * * shall be expended for other than costs of

administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.

**{¶ 4}** The trial court agreed and granted injunctive relief and declaratory judgment. It concluded that "$3 or 60% of the $5 fee collected under R.C. 4509.05 as amended in 2009 is money 'relating to' registration, operation, or use of vehicles on public highways in Ohio, but that such funds are not being 'expended' consistent with the limited and specific purposes enumerated in Article XII, Section 5a of the Ohio Constitution." On appeal, the court of appeals affirmed sub nom. *Ohio Trucking Assn. v. Stickrath,* 10th Dist. No. 10-AP-673, 2011-Ohio-4361.

**{¶ 5}** We granted the discretionary appeal of appellants, Thomas P. Charles, director of public safety, and Mike Rankin, registrar of motor vehicles.

### Analysis

*Standing*

In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury.

*State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-470, 715 N.E.2d 1062 (1999). The director and registrar argue that the plaintiffs lack standing because they have not suffered harm and because any injury to them is no different from that shared by the general public. The trial court and court of appeals concluded to the contrary, and so do we.

{¶ 6} The plaintiffs do not lack standing merely because they are associations that are suing on behalf of their members. *Ohio Contractors Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994), citing *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

{¶ 7} The parties stipulated to many facts, among them that the plaintiffs purchase in excess of five million certified abstracts annually. The amended statute increases the cost of a certified abstract from $2 to $5, meaning that collectively the plaintiffs would pay approximately $15 million more in fees per year than under the old statute. Again based on the stipulations, most of the information provided on the certified abstract is available to the public for free pursuant to the Public Records Act, R.C. 149.43. We conclude that the plaintiffs are threatened with an injury that is different in kind from that suffered by the public in general, that amended R.C. 4509.05 will cause the injury, and that the relief sought by their complaint would redress the injury. Consequently, we conclude that the plaintiffs have standing to challenge the constitutionality of R.C. 4509.05. We affirm the portion of the court of appeals' decision that upheld the standing of the plaintiffs.

*Are the abstract fees related to the registration, operation,*
*or use of vehicles on public highways?*

{¶ 8} Article XII, Section 5a of the Ohio Constitution states that money collected from fees "relating to the registration, operation, or use of vehicles on public highways" may be expended only for certain enumerated purposes. *See*

4

*Knox Cty. Bd. of Commrs. v. Knox Cty. Engineer*, 109 Ohio St.3d 353, 2006-Ohio-2576, 847 N.E.2d 1206, at ¶ 14; *Grandle v. Rhodes*, 169 Ohio St. 77, 157 N.E.2d 336 (1959), paragraph one of the syllabus. The parties stipulated that the money allocated to the various funds in R.C. 4509.05(B), other than the money allocated to the state Bureau of Motor Vehicles fund, will not be expended solely for a purpose permitted by Section 5a. Accordingly, the issue in this case devolves to a single straightforward question: Are the certified-abstract fees related to the registration, operation, or use of vehicles on public highways?

{¶ 9} Our standard rules of constitutional construction are instructive but not particularly helpful. For example, Section 5a is an exception to the General Assembly's broad constitutional authority to raise and spend revenue (Article II, Section 1) and, as such, should be strictly construed. *State ex rel. Keller v. Forney*, 108 Ohio St. 463, 141 N.E. 16 (1923), paragraph one of the syllabus. But what exactly does that mean in this case? Should we narrowly construe "relating to" (the director and registrar argue in effect that we should read it as "directly related to"), or should we broadly construe it because the ordinary definition of "relating to" is broad? We are, as always, constrained to "look at the language of the provision itself," *State ex rel. Maurer v. Sheward*, 71 Ohio St.3d 513, 520, 644 N.E.2d 369 (1994), though in this case, that approach leads us right back to "relating to." We are to define words according to "their usual, normal, or customary meaning." *State ex rel. Taft v. Franklin Cty. Ct. of Common Pleas*, 81 Ohio St.3d 480, 481, 692 N.E.2d 560 (1998). That offers little help when defining a term as elastic as "relating to," which means "connected with," which is itself, not surprisingly, rather general. *Webster's New World Dictionary*, Third College Edition 1132 (1988).

{¶ 10} Even the Supreme Court of the United States has essentially punted on defining "relate to." In discussing whether a state law was related to an employee pension plan, it stated:

> [O]ne might be excused for wondering, at first blush, whether the words of limitation * * * do much limiting. If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World's Classics 1980). * * * That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here.

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

{¶ 11} The Supreme Court considered "relate to" to be expansive and was concerned that a broad interpretation would "read Congress's words of limitation as mere sham * * * whenever Congress speaks to the matter with generality." *Id*. The court concluded, with respect to "relate to," that the court "simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the * * * statute." *Id*. at 656.

{¶ 12} Having found dictionaries and our rules of constitutional construction unhelpful regarding defining "relating to," like the Supreme Court of the United States, we will resort to examining the objectives of R.C. 4509.05. First, we turn to some of the history surrounding the approval of the amendment that added Section 5a to our constitution. The official publicity pamphlet included arguments for and against the amendment. They were largely mirror images of each other. The argument for the amendment included the following statement:

6

"This Amendment simply says you want your automobile license and gas tax money to go for better roads and streets. * * *

"* * *

"Ohio originally promised that automobile license and gas tax funds would go for roads, streets, and related purposes. But temptation was too great and millions of these special tax dollars have been and are being spent for other purposes."

Quoted in the court of appeals' opinion, 2011-Ohio-4361, ¶ 31. The argument against the amendment included the following:

"This amendment places the Legislature in a strait-jacket and severely handicaps it in applying the revenue of the state to the needs of the state. The Legislature could not use highway revenues for emergency purposes and the revenues from such taxes will have to be spent for roads and streets and for no other purpose."

*Id.,* ¶ 32.

{¶ 13} Next, we look at the report of the Ohio Constitutional Revision Committee from 1972 as quoted by the court of appeals. The report concluded that Section 5a requires that " 'all of the revenues derived from the registration of motor vehicles and from the taxes imposed on the purchase of fuels for motor vehicles be expended on the requirements of the state's highway system.' 4 Ohio Constitutional Revision Commission Finance and Taxation Committee at 1755 (Sept. 22, 1972)." 2011-Ohio-4361, ¶ 33.

{¶ 14} Having reviewed these same statements, the court of appeals concluded that "the objective of Section 5a was and is to prevent taxes and fees collected from the motoring public from being diverted to non-highway purposes.

* * * The effect of Section 5a is for those people who use the roads to bear the burden and expense of constructing and maintaining the roads." 2011-Ohio-4361, ¶ 34. We agree with this characterization by the court of appeals of the objectives of the voters who approved the addition of Section 5a to the Ohio Constitution.

{¶ 15} At an extreme level, at "the furthest stretch of its indeterminacy," there is no doubt that fees for certified abstracts are related to the registration of vehicles on public highways. We are not convinced that this extreme view of "relating to" is logical; we know that it is not compelled by the language of Section 5a or the objectives of the amendment.

{¶ 16} The information maintained by the Bureau of Motor Vehicles is largely available for free pursuant to a public-records request. Based on this, we are persuaded that the fee for a certified abstract is less related to the "registration, operation, or use of vehicles" than to the process of certification. The process of certification is useful, perhaps even necessary, to certain of the plaintiffs, but it is not necessary to the general motoring public. The production of certified abstracts cannot happen without the registration information maintained by the Bureau of Motor Vehicles. But we conclude that the fees for certified abstracts are not related to the registration, operation, or use of vehicles on public highways, because the vast majority of drivers and vehicles on the road are registered, operated, or used without the necessity of a certified abstract. Another way to think about it is that the fee for a certified abstract is not triggered by the registration, operation, or use of a vehicle on the public highways.

{¶ 17} We decline to define "relating to." The term is elastic enough for the General Assembly to use in many different situations. When it does, we will do our best to discern how loosely or strictly the term should be interpreted. In this case, we are convinced that the money derived from certified abstracts is related to the process of certification, not to the "registration, operation, or use of

vehicles on public highways." Accordingly, we reverse the judgment of the court of appeals, which concluded otherwise.

**Conclusion**

**{¶ 18}** For the foregoing reasons, we agree with the court of appeals with respect to standing, but we reverse the judgment in favor of the plaintiffs.

Judgment reversed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

————————————

Vorys, Sater, Seymour & Pease, L.L.P., Lisa Pierce Reisz, Kenneth J. Rubin, and Thomas E. Szykowny, for appellees.

Michael DeWine, Attorney General, Elisabeth A. Long, Stephen P. Carney, and Matthew P. Hampton, Deputy Solicitors, and Hilary R. Damaser, Assistant Attorney General, for appellants.

Chad A. Endsley and Leah F. Curtis, urging affirmance for amicus curiae Ohio Farm Bureau Federation.

Maurice A. Thompson, urging affirmance for amicus curiae 1851 Center for Constitutional Law.

Greg Saul, urging affirmance for amicus curiae National Federation of Independent Business/Ohio.

Linda Woggon, urging affirmance for amicus curiae Ohio Chamber of Commerce.

————————————