[Cite as *State v. Hendon*, 2016-Ohio-8137.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 27951 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL D. HENDON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.  CR 2014 01 0120 (B) |

DECISION AND JOURNAL ENTRY

Dated: December 14, 2016

HENSAL, Judge.

{¶1}   Appellant, Michael Hendon, appeals his convictions from the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}   On New Year's Eve in 2013, Rhonda Blankenship was home making dinner for her boyfriend, John Kohler, and two step-children, David Carpenter-Kohler and Ashley Carpenter.  Around 6:30 p.m., Michael Hendon knocked on the door and asked to buy marijuana from John, whom Hendon had purchased marijuana from in the past.  John agreed to sell him marijuana and Hendon asked if he could go get his brother, Eric.  John acquiesced and Hendon left and returned about five minutes later with Eric.  Rhonda was still in the kitchen when the brothers arrived and heard an altercation ensue.  While John remained at the front door struggling to keep Eric from entering the home, Hendon managed to enter the home and

confronted Rhonda in the kitchen. Hendon had a gun in his hand and put his finger to his lips to "shush" Rhonda. What followed was a horrific course of events.

{¶3} The testimony indicated that Eric forced his way into the home, grabbed Rhonda from the kitchen, led her into the living room, and threw her to the floor. By this time, Ashley was already on the living room floor crouched between a coffee table and a love seat. David was in the back bedroom when the brothers entered the home and remained there throughout the course of events. Eric then shot John, forced him to open a safe located in the living room closet that contained cash and marijuana, and then shot him again. Eric then grabbed Ashley and started to lead her to the back bedroom. Rhonda got up from the floor and reached for Ashley, but Eric pushed Rhonda back down and stabbed her in the cheek. Eric and Hendon then forced Ashley into the back bedroom where David was located. Rhonda, who was still in the living room, then heard several gunshots. Meanwhile, John had crawled from the living room into the kitchen, and then collapsed onto the kitchen floor. The brothers then emerged from the back bedroom together. Eric approached Rhonda in the living room and shot her in the left eye. Rhonda briefly lost consciousness and awoke to the brothers striking John with a kitchen chair. The brothers then left the residence and Rhonda called the police. John and the two children died as a result of their injuries.

{¶4} A jury convicted Hendon of the following crimes: (1) aggravated murder of John Kohler, David Carpenter-Kohler, and Ashley Carpenter under Revised Code Section 2903.01(B); (2) attempted murder of Rhonda Blankenship under Sections 2903.02(A) and 2923.02; (3) aggravated robbery under Section 2911.01(A)(1); (4) aggravated robbery of John Kohler, David Carpenter-Kohler, Ashley Carpenter, and Rhonda Blankenship under Section 2911.01(A)(3); (5) felonious assault of Rhonda Blankenship under Sections 2903.11(A)(1) and 2903.11(A)(2).

Each count, with the exception of the aggravated murder counts for Ashley Carpenter and David Carpenter-Kohler, contained firearm specifications.

{¶5} For purposes of sentencing, the trial court merged the two felonious assault counts with the count for attempted murder of Rhonda Blankenship, and merged the five counts of aggravated robbery. The trial court sentenced Hendon to three consecutive terms of life imprisonment for the aggravated murder counts, 11 years of imprisonment for attempted murder, and 11 years of imprisonment for aggravated robbery. The trial court also imposed three three-year sentences for the firearm specifications that accompanied those counts. The trial court ordered the aggravated murder, attempted murder, and aggravated robbery sentences to run consecutively. It also ordered the three three-year firearm specification sentences to run consecutively, and consecutive to the aggravated murder, attempted murder, and aggravated robbery sentences. In summary, the trial court sentenced Hendon to life imprisonment without the possibility of parole. Hendon has appealed his convictions, raising eight assignments of error for our review.

## II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN IT OVERRULED AN OBJECTION TO THE PROSECUTOR'S VOIR DIRE STATEMENTS BOLSTERING THE CREDIBILITY OF THE PROSECUTOR AND ALSO BY PLAIN ERROR WHEN THE PROSECUTOR INITIATED MULTIPLE COMMENTS ABOUT DEFENDANT'S FIFTH AMENDMENT RIGHT TO NOT TESTIFY.

{¶6} In his first assignment of error, Hendon argues that the trial court violated his constitutional rights to due process and a fair trial in contravention of Article 1, Section 10 of the Ohio Constitution, as well as the Fifth, Sixth, and Fourteenth Amendments of the United States

Constitution. In this regard, he argues that the trial court committed plain error by allowing the prosecutor to comment on his right to not testify during voir dire. He also argues that the trial court committed reversible error by not sustaining defense counsel's objection to the prosecutor's comments that prosecutors are officers of the court who "follow the law * * * [and] the rules[,]" and "have an obligation to the Defendant to make sure that his constitutional rights are upheld[.]" He argues that the prosecutor sought to improperly influence the jury and to bolster the prosecutor's credibility with these statements.

{¶7} In response, the State argues that the prosecutor's comments about Hendon's right to not testify were made simply to educate the potential jurors regarding the trial process, not to lead them to believe that Hendon's decision to not testify would somehow imply his guilt. With respect to the prosecutor's comments regarding the duty to follow the law and ensure that Hendon's constitutional rights are upheld, the State argues that there is no support for Hendon's argument that these comments were intended to mislead the potential jurors or to bolster the prosecutor's credibility. Rather, the State argues, these comments were made to ensure that the potential jurors understood that prosecutors are officers of the court and to debunk any perception that prosecutors "want to win by any means necessary[.]"

{¶8} We will first address Hendon's argument with respect to the prosecutor's comments regarding his constitutional right to not testify. Hendon concedes that his trial counsel did not object to the State's comments and, therefore, that this Court's review of the issue is limited to a plain-error analysis. *See State v. Zepeda-Ramires*, 9th Dist. Lorain No. 12CA010275, 2013-Ohio-1224, ¶ 11 (stating that a litigant's failure to raise an issue below constitutes a forfeiture of that issue on appeal, subject only to plain-error review). "In order to establish plain error, there must be (1) a deviation from a legal rule; (2) that is obvious, and; (3)

that affects the appellant's substantial rights." *State v. Smith*, 9th Dist. Summit No. 25069, 2010-Ohio-3983, ¶ 27. "The appellant 'bears the burden of demonstrating that a plain error affected his substantial rights[,]'" which means that the error affected the outcome of the trial. *Id.*, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14; *State v. Armstrong*, 152 Ohio App.3d 579, 2003-Ohio-2154, ¶ 45 (9th Dist.).

{¶9} While Hendon asserts that the trial court committed plain error, his assignment of error is devoid of any argument indicating how the prosecutor's comments affected the outcome of the trial. To the extent that such an argument exits, "it is not this court's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Accordingly, Hendon has not met his burden of establishing that the trial court committed plain error. *State v. Bennett*, 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 68 ("Because [the appellant] has not established prejudice, we do not find that his alleged error rises to the level of plain error.").

{¶10} Next, we will review the prosecutor's other allegedly improper comments to determine whether they were improper and, if so, whether they prejudicially affected Hendon's substantial rights. *State v. Smith*, 9th Dist. Summit No. 25834, 2012-Ohio-2614, ¶ 15. As previously noted, Hendon argues that the prosecutor's comments indicating that prosecutors are officers of the court, that they must follow the law and the rules, and that they must ensure that a defendant's constitutional rights are upheld were designed to improperly influence the potential jurors. To that end, he argues that these comments bolstered the prosecution's credibility and portrayed them as the "good guys[,]" thereby insinuating that defense counsel is somehow inferior.

{¶11} While prosecutors "must avoid insinuations and assertions calculated to mislead[,]" we cannot say that the prosecutor's comments were improper under the circumstances. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). The record reflects that the prosecutor was attempting to challenge any perception (advanced by television or otherwise) that prosecutors want to win by any means necessary. In doing so, the prosecutor accurately represented the law (i.e., that prosecutors are officers of the court, that they must follow the law and the rules, and that they must ensure that a defendant's constitutional rights are upheld), and there is no indication that she did so in an attempt to mislead the potential jurors or to disparage defense counsel. Further, even assuming that the prosecutor's comments were improper, Hendon has not established that the comments affected his substantial rights. His arguments, therefore, lack merit.

{¶12} In light of the foregoing, Hendon's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

IT WAS PLAIN ERROR TO INSTRUCT THE JURY ON COMPLICITY AS THE INDICTMENT HANDED DOWN BY THE GRAND JURY DID NOT CONTAIN ANY REFERENCE TO COMPLICITY.

ASSIGNMENT OF ERROR III

IT WAS STRUCTURAL ERROR OR PLAIN ERROR TO ALLOW DEFENDANT TO BE CONVICTED OF COMPLICITY OFFENSES WHEN THE CHARGING DOCUMENT DID NOT CONTAIN ANY REFERENCE TO R.C. 2923.03.

{¶13} In his second assignment of error, Hendon argues that the trial court committed plain error by instructing the jury on complicity because the indictment did not contain a charge for same. Had the trial court not instructed the jury on complicity, he argues, the jury would not have found him guilty of the charged crimes. Relatedly, in his third assignment of error, Hendon argues that it was structural or plain error to allow Hendon to be convicted of complicity with

respect to the charged crimes because complicity was not charged in the indictment. He, therefore, argues that he did not receive a fair trial. For the reasons that follow, we disagree.

{¶14} The Ohio Supreme Court has stated that "a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment * * * does not mention complicity." *State v. Herring*, 94 Ohio St.3d 246, 251 (2002); *see also State v. White*, 9th Dist. Summit Nos. 23955, 23959, 2008-Ohio-2432, ¶ 28 (stating same). An instruction regarding complicity is proper "if 'the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor[.]'" *State v. Simpson* 9th Dist. Lorain Nos. 12CA010147, 12CA010148, 2013-Ohio-4276, ¶ 33, quoting *State v. Perryman,* 49 Ohio St.2d 14 (1976), paragraph five of the syllabus. For a person to be convicted of complicity by aiding and abetting another in a crime, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime[.]" *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Further, the evidence must show that the defendant expressed concurrence with the unlawful act or intentionally did something to contribute to an unlawful act." *State v. White*, 9th Dist. Summit Nos. 23955, 23959, 2008-Ohio-2432, ¶ 29.

{¶15} Here, the evidence adduced at trial indicated, in part, that: Hendon and his brother entered the residence together armed with guns; Hendon "shush[ed]" Rhonda while his brother shot John Kohler and forced him to open the safe; both brothers went to the back bedroom where the two children were shot and killed; after emerging from the back bedroom, the brothers struck John Kohler with a chair; and the brothers left the residence together. Hendon later admitted to a detective that he received some of the stolen marijuana, but denied receiving any stolen money.

{¶16} While the State concedes that Hendon's brother may have been the one "calling the shots," it argues that the evidence indicated that Hendon aided and abetted him. Because the evidence adduced at trial "could reasonably be found to have proven [Hendon] guilty as an aider and abettor," (i.e., that he supported, assisted, encouraged, cooperated with, advised, or incited his brother in the commission of the crimes) we hold that the trial court did not err by instructing the jury on complicity. *Perryman* at paragraph five of the syllabus. We, therefore, hold that Hendon's arguments as they relate to his second and third assignments of error lack merit. Accordingly, Hendon's second and third assignments of error are overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY DENYING THE CRIMINAL RULE 29 MOTION BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE MENS REA REQUIRED FOR AGGRAVATED MURDER, ATTEMPTED MURDER, AND FELONIOUS ASSAULT.

{¶17} In his fourth assignment of error, Hendon challenges his convictions for complicity to commit aggravated murder and attempted murder on the basis that the evidence did not support a finding that he had the required mens rea of purposeful, and that the only person that had the requisite mens rea was his brother. While mentioned in the caption for this assignment of error, Hendon has not argued that the State presented insufficient evidence related to the felonious assault charges. Hendon reiterates his argument with respect to the fact that the indictment did not contain a charge for complicity, and further argues that this Court should overrule a decision from the Seventh District Court of Appeals that holds that complicity is inherent in all indictments. *See State v. Christian*, 184 Ohio App.3d 1, 2009-Ohio-4811, ¶ 3 (7th Dist.).

{¶18} As an initial matter, we note that this Court has no authority to review, much less overrule, a decision from another appellate court. *See* Ohio Constitution, Article IV, Section

3(B)(2) ("Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * * [and] final orders or actions of administrative officers or agencies."). We, therefore, will not address Hendon's argument as it relates to the Seventh District's decision in *State v. Christian*. Further, given our analysis of Hendon's challenge to the indictment above, we will not re-address that argument here.

{¶19} Next, although captioned as a challenge to the sufficiency of the evidence, Hendon has not argued that the State presented insufficient evidence to support his convictions for complicity with respect to the charged crimes. Instead, he presents arguments suggesting that he did not personally shoot or injure any of the victims. But as the Ohio Supreme Court has stated, "[t]o support a conviction for complicity by aiding and abetting * * * the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson*, 93 Ohio St.3d 240, at syllabus. Although Hendon provides a conclusory statement that the evidence indicated that he "'stood back' and stayed quiet[,]" he has not developed an argument with respect to how his conduct did not constitute complicity by aiding and abetting, and we will not create one on his behalf. *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 24. To the extent he argues that he was not the principal offender, his argument is misplaced. Given the arguments before this Court, we overrule Hendon's fourth assignment of error.

ASSIGNMENT OF ERROR V

> THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE MENS REA REQUIREMENT WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

{¶20}  In his fifth assignment of error, Hendon asserts that his convictions are against the manifest weight of the evidence.  When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction.  *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶21}  Hendon states that the jury erroneously found him guilty of aggravated murder, attempted murder, and felonious assault, and that the evidence indicated that he was "mostly a passive observer[.]"  For reasons unknown to this Court, he then states that his brother was on parole at the time of the crimes.  Aside from case law pertaining to the standard of review, Hendon has cited no authority in support of his position.  *See* App.R. 16(A)(7).  This Court will not address Hendon's undeveloped argument, nor will we "assume [Hendon's] duty and formulate an argument on his behalf."  *Lortz*, 2008-Ohio-3108, at ¶ 24.  Hendon's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

> SENTENCING APPELLANT ON TWO COUNTS OF AGGRAVATED MURDER AND ONE COUNT OF ATTEMPTED MURDER VIOLATED THE DOUBLE JEOPARDY CLAUSES OF THE CONSTITUTIONS OF OHIO AND OF THE UNITED STATES.

{¶22}  In his sixth assignment of error, Hendon argues that his convictions for two counts of complicity to commit aggravated murder and one count of complicity to commit attempted murder violate the double jeopardy clauses of the Ohio and United States

Constitutions. In this regard, he argues that the State did not prove beyond a reasonable doubt that he committed three separate acts of complicity with a separate animus for each act.

{¶23} The Ohio Supreme Court has stated that "[w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 26; R.C. 2941.25(B) (governing allied offenses of similar import). Here, Hendon was convicted of three counts of complicity to commit aggravated murder. Each count pertained to a different victim (namely, John Kohler, David Carpenter-Kohler, and Ashley Carpenter). Hendon was also convicted of complicity to commit attempted murder of Rhonda Blankenship. Because each conviction involved a different victim, we hold that Hendon's convictions do not violate his right against double jeopardy. *Ruff* at ¶ 26, 31. Hendon's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

THE NINE YEARS OF INCARCERATION IMPOSED FOR THREE FIREARM SPECIFICATIONS VIOLATE THE DOUBLE JEOPARDY CLAUSES OF THE CONSTITUTION OF OHIO AND THE CONSTITUTION OF THE UNITED STATES BECAUSE OHIO REVISED CODE 2929.14(B)(1)(g) IS UNCONSTITUTIONAL.

{¶24} In his seventh assignment of error, Hendon argues that the sentences imposed for the three firearm specifications violate the double jeopardy clauses of the Ohio and United States Constitutions because Section 2929.14(B)(1)(g) is unconstitutional. Section 2929.14(B)(1)(g) provides, in part:

If an offender is convicted of * * * two or more felonies, if one or more of those felonies are aggravated murder, * * * attempted murder, aggravated robbery, [or] felonious assault * * *, and if the offender is convicted of * * * a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * * and, in its

discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

**{¶25}** This Court has summarized this Section as requiring "a trial court [to] impose at least two prison terms for firearm specifications if the conditions set forth in R.C. 2929.14(B)(1)(g) apply. The court then also could, in its discretion, impose additional prison terms for any other remaining firearm specifications." *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 30. Hendon does not dispute that this Section applies. Rather, he argues that it violates the Ohio and United States Constitutions because "the statute has no concern as to whether or not merger of the offenses – or merger of the specifications – would be mandated pursuant to the concept of double jeopardy."

**{¶26}** We will begin our analysis with a review of the standing requirements for challenging the constitutionality of a statute. "In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury." *Ohio Trucking Assn. v. Charles*, 134 Ohio St.3d 502, 2012-Ohio-5679, ¶ 5, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-470 (1999).

**{¶27}** In his assignment of error, Hendon has not argued that the trial court erred by not merging his convictions for aggravated murder, attempted murder, and aggravated robbery. [1] Additionally, Hendon has not argued that the trial court erred by not merging the firearm

---

[1] Although Hendon vaguely asserts that he did not have "four separate acts with four separate animuses" to support his convictions for complicity to commit aggravated murder and attempted murder, we previously rejected that argument in his sixth assignment of error.

specifications that accompanied those charges. Thus, although Hendon argues that the statute is unconstitutional because it does not consider whether the underlying offenses merged, he has not demonstrated how the application of the statute in this case has caused, or threatens to cause, a "direct and concrete injury" to him. *Ohio Trucking Assn.* at ¶ 5. Because Hendon has not established that he has standing to raise a constitutional issue, we overrule his assignment of error.

## ASSIGNMENT OF ERROR VIII

APPELLANT SUFFERED PREJUDICE FROM REVERSIBLE ERROR WHEN THE TRIAL COURT ORDERED THE MOTION FOR A BILL OF PARTICULARS HELD IN ABEYANCE.

**{¶28}** In his final assignment of error, Hendon argues that the trial court committed reversible error by ordering his motion for a bill of particulars to be held in abeyance. In response, the State argues that Hendon has waived this issue on appeal because he moved the trial court to hold that motion in abeyance.

**{¶29}** Our review of the record indicates that defense counsel not only moved the trial court to hold the motion for a bill of particulars in abeyance, he also later informed the court that the motion was moot. Specifically, the record reflects that the trial court held a hearing on November 17, 2014, to address a number of motions, and that Hendon's counsel moved the trial court to hold its motion for a bill of particulars in abeyance. The trial court did so and instructed Hendon's counsel that it would be his responsibility to bring the issue to the court's attention at a later date. At a subsequent hearing on July 22, 2015, defense counsel informed the court that the motion was moot, and the State agreed. The trial court entered an order to that effect the following day. Hendon, therefore, has waived any argument with respect to this issue. *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292, 295 (9th Dist.1994)

(defining "waiver" as a "voluntary relinquishment of a known right or such conduct that warrants an inference of a relinquishment of that right."). Accordingly, Hendon's eighth assignment of error is overruled.

### III.

**{¶30}** Hendon's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

DONALD GALLICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.