[Cite as *Fowler v. Ohio Dept. of Public Safety*, 2017-Ohio-7038.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rory Fowler, | : | |
| Plaintiff-Appellant/<br>Cross-Appellee, | : | |
| | : | No. 16AP-867 |
| v. | | C.P.C. No. 16CV-3818) |
| | : | |
| Ohio Department of Public Safety,<br>Bureau of Motor Vehicles et al., | | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees/<br>Cross-Appellants. | : | |
| | : | |

D E C I S I O N

Rendered on August 1, 2017

**On brief:** *Mayle Ray & Mayle LLC*, *Andrew R. Mayle*, *Jeremiah S. Ray*, and *Ronald J. Mayle*, for appellant/cross-appellee. **Argued:** *Andrew R. Mayle*.

**On brief:** *Michael DeWine*, Attorney General, *Peter L. Jamison*, *Hilary R. Damaser*, and *Zachary C. Schaengold*, for appellees/cross-appellants. **Argued:** *Peter L. Jamison*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant/cross-appellee, Rory Fowler, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees/cross-appellants, Ohio Department of Public Safety, Bureau of Motor Vehicles ("BMV"), and Ohio Treasurer Josh Mandel ("Treasurer") (collectively "appellees"). For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant commenced this action against appellees alleging that the BMV wrongfully collected a $100 financial responsibility reinstatement fee from him and

others similarly situated pursuant to a state statute that is unconstitutional. More particularly, appellant contends that the 2009 amendment to R.C. 4509.101, which increases the financial responsibility reinstatement fees, violates Article XII, Section 5a, Ohio Constitution because it directs the registrar to deposit the additional fee income into the state treasury to the credit of the indigent defense support fund. According to the complaint, Article XII, Section 5a, Ohio Constitution prohibits the Treasurer from expending such fee income for any purpose other than "payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways." The complaint seeks an order declaring the amendments unconstitutional, enjoining the BMV from enforcing the amendments and restitution from the Treasurer of the additional fees paid thereunder. Appellant also requests an order certifying a class consisting of "all persons who, since January 11, 2010 through present, paid a fee to the Ohio BMV * * * under the current version of R.C. 4509.101(A)(5)(a)." (Compl. at ¶ 40.)

{¶ 3} On May 25, 2016, the BMV filed a motion to dismiss the complaint, pursuant to Civ.R. 12(B)(6), for failure to state a claim on which relief can be granted. On November 16, 2016, the trial court determined that "R.C. § 4509.101 does not violate Article XII, Section 5a of the Ohio Constitution." (Decision at 6.) Accordingly, the trial court granted appellees' motion and dismissed appellant's complaint. The trial court did not reach the issue of class certification.

{¶ 4} Appellant timely appealed to this court from the decision of the trial court. Appellees timely filed a notice of cross-appeal. On January 10, 2017, appellant filed a motion to dismiss the cross-appeal, arguing that App.R. 3(C)(2) does not require or permit a cross-appeal where the cross-appellant merely seeks to defend the underlying judgment on different grounds than were relied on by the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 5} Appellant/cross-appellee assigns the following as trial court error:

> The trial court erroneously opined that a fee required to be paid before people may operate or register their vehicles is not a fee "relating to" the registration, operation, or use of vehicles on public highways within the meaning of Ohio Const. Art. XII, Sec. 5a.

{¶ 6} Appellees/cross-appellants' sole assignment of error is as follows:

> The trial court erred when it determined that it had jurisdiction to review the action before it, when the plaintiff had not shown he had standing.

## III. STANDARD OF REVIEW

{¶ 7}  "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147 (1955).  Accordingly, the party challenging the constitutionality of a statute bears the burden of proving that the law is unconstitutional beyond a reasonable doubt.  *Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, ¶ 11.  The constitutionality of a statute is a question of law, which is reviewed de novo on appeal.  *In re D.S.*, 10th Dist. No. 15AP-487, 2016-Ohio-2810, ¶ 9.  *See also Liposchak v. Bur. of Workers' Comp.*, 138 Ohio App.3d 368, 385 (7th Dist.2000), citing *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

## IV. LEGAL ANALYSIS

### A. Appellant's Assignment of Error

{¶ 8}  In appellant's assignment of error, appellant argues that the trial court erred when it determined that the financial responsibility reinstatement fee is not a fee "relating to" the registration, operation, or use of vehicles on public highways for purposes of Article XII, Section 5a, Ohio Constitution.  We disagree.

{¶ 9}  R.C. 4509.101, as amended by Am.Sub.H.B. No. 1, provides, in relevant part, as follows:

> (A)(1)  No person shall operate * * * a motor vehicle in this state, unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle.
>
> (2) Whoever violates division (A)(1) of this section shall be subject to the following civil penalties:
>
> * * *
>
> (d)  In addition to the suspension of an owner's license under division (A)(2)(a), (b), or (c) of this section, the suspension of the rights of the owner to register the motor vehicle and the

impoundment of the owner's certificate of registration and license plates until the owner complies with division (A)(5) of this section.

* * *

(5) [T]he registrar shall not restore any operating privileges or registration rights suspended under this section, * * * unless the person, in addition to complying with all other conditions required by law for reinstatement of the operating privileges or registration rights, complies with all of the following:

(a) *Pays to the registrar or an eligible deputy registrar a financial responsibility reinstatement fee of one hundred dollars for the first violation of division (A)(1) of this section, three hundred dollars for a second violation of that division, and six hundred dollars for a third or subsequent violation of that division.*

(Emphasis added.)

{¶ 10} Prior to the effective date of Am.Sub.H.B. No. 1, October 16, 2009, the financial responsibility reinstatement fees were $75 for the first violation, $250 for a second violation, and $500 for a third or subsequent violation. In addition to raising the financial responsibility reinstatement fees, Am.Sub.H.B. No. 1 amendments to R.C. 4509.101 direct the proceeds as follows:

(E) All fees, except * * * those portions of the financial responsibility reinstatement fees as otherwise specified in this division, collected under this section shall be paid into the state treasury to the credit of the public safety - highway purposes fund * * * used to cover costs incurred by the bureau in the administration of this section and * * * and by any law enforcement agency employing any peace officer who returns any license, certificate of registration, and license plates to the registrar pursuant to division (C) of this section.

*Of each financial responsibility reinstatement fee the registrar collects pursuant to division (A)(5)(a) of this section or receives from a deputy registrar under division (A)(5)(d) of this section, the registrar shall deposit twenty-five dollars of each one-hundred-dollar reinstatement fee, fifty dollars of each three-hundred-dollar reinstatement fee, and one hundred dollars of each six-hundred-dollar reinstatement fee*

> *into the state treasury to the credit of the indigent defense*
> *support fund created by section 120.08 of the Revised Code.*

(Emphasis added.)

{¶ 11} In Am.Sub.H.B. No. 1, the General Assembly added the second paragraph of subsection (E), which diverts a portion of the financial responsibility reinstatement fees to the indigent defense support fund. Appellant argues that the diversion of any portion of the financial responsibility reinstatement fees to the indigent defense support fund violates Article XII, Section 5a, Ohio Constitution because the financial responsibility reinstatement fee is a fee "relating to registration, operation, or use of vehicles on public highways." Article XII, Section 5a, Ohio Constitution entitled "[u]se of motor vehicle license and fuel taxes restricted," provides as follows:

> No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.

{¶ 12} There is no argument in this case that the indigent defense support fund is an authorized expenditure under Article XII, Section 5a, Ohio Constitution. The dispute in this case is whether the financial responsibility reinstatement fee is "relating to" registration, operation, or use of vehicles on public highways for purposes of Article XII, Section 5a, Ohio Constitution. On this issue, our legal analysis begins and ends with our application of two decisions of the Supreme Court of Ohio decided just one day apart: *Ohio Trucking Assn. v. Charles*, 134 Ohio St.3d 502, 2012-Ohio-5679, and *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776. In each of these two cases, the issue for the Supreme Court was whether a certain legislative enactment violated Article XII, Section 5a, Ohio Constitution.

{¶ 13} Appellant relies primarily on *Beaver Excavating* in support of his position. In *Beaver Excavating,* the appellants, a group including contractors and county

engineers, brought suit against the Tax Commissioner of Ohio challenging the constitutionality of the Ohio commercial activity tax ("CAT"), R.C. 5751.01 et seq., as applied to gross receipts from motor vehicle fuel sales. The county engineers claimed that they were being illegally deprived of that money because the CAT is not collected and distributed in a manner consistent with Article XII, Section 5a, Ohio Constitution. Accordingly, the complaint sought a declaration that the CAT violates Article XII, Section 5a and an injunction prohibiting the tax commissioner from levying, enforcing, or collecting the CAT as it relates to gross receipts derived from the sales of motor vehicle fuel.

{¶ 14} The trial court granted summary judgment in favor of the tax commissioner, and the county engineers appealed to this court. This court affirmed the judgment of the trial court holding that the background and history of Article XII, Section 5a did not support the contention that the CAT was a tax "relating to" motor vehicle fuel sales. *Beaver Excavating Co. v. Levin*, 10th Dist. No. 10AP-581, 2011-Ohio-3649, ¶ 34.

{¶ 15} The Supreme Court accepted the county engineers' appeal. The question to be decided by the court was "whether the CAT is a tax 'relating to' motor-vehicle-fuel sales such that it implicates the prohibition in Section 5a on spending revenue for nonhighway purposes." *Id.* at ¶ 28. In reversing the judgment of this court, the Supreme Court engaged in the following analysis:

> [T]he CAT proceeds bear a logical and close connection to motor-vehicle fuels. The CAT proceeds are (1) money (2) derived (3) from an excise (4) on motor-vehicle-fuel sales. Although not a transactional tax, the amount of tax one must pay to the state because of the CAT is directly based on motor-vehicle-fuel-sales revenue. Objectively, one is hard pressed to deny the close connection between the tax paid (moneys derived) and the source (excise on "fuels used") of that tax revenue. The close relationship is not severed because the excise is on the revenue derived from the sales of motor-vehicle fuel rather than the quantity of such fuel. There is still a close connection to the "fuels used for propelling vehicles" on public highways and the revenue generated to fall within the amendment's intended ambit. Consequently, we conclude that the CAT revenues derived from sales of motor-vehicle fuel relate to motor-vehicle fuel used for propelling vehicles on public highways as contemplated within Section 5a.

*Id.* at ¶ 33.

{¶ 16} One day earlier, the Supreme Court decided *Ohio Trucking.* In *Ohio Trucking*, the appellees, including the Ohio Trucking Association, filed a complaint for injunctive relief and declaratory judgment, challenging the constitutionality of R.C. 4509.05(A), as enacted April 1, 2009. R.C. 4509.05 required the registrar of motor vehicles, on request of any person, to "search and furnish a certified abstract" of the number of motor vehicle accidents in which that person has been involved and the person's record of convictions for violations of the motor vehicle laws. The statute raised the fee for each abstract from $2 to $5 and required the registrar to divert a portion of the fee collected to several non-highway purposes.[1] In discussing the meaning of the term "relating to," as used in Article XII, Section 5a, Ohio Constitution, the court in *Ohio Trucking* suggested that the appropriate breadth of the term depends on the situation in which the question arises. The court stated:

> We decline to define "relating to." The term is elastic enough for the General Assembly to use in many different situations. When it does, we will do our best to discern how loosely or strictly the term should be interpreted. In this case, we are convinced that the money derived from certified abstracts is related to the process of certification, not to the "registration, operation, or use of vehicles on public highways." Accordingly, we reverse the judgment of the court of appeals, which concluded otherwise.

*Id.* at ¶ 17.

{¶ 17} The court in *Ohio Trucking* concluded that the fees charged by the registrar of motor vehicles for the production of certified abstracts of driving records were not "relating to" the registration, operation, or use of vehicles on public highways within the meaning of Article XII, Section 5a, Ohio Constitution. In reaching this conclusion, the court reasoned as follows:

---

[1] R.C. 4509.05(C) provided in relevant part: "Of each five-dollar fee the registrar collects under this division, the registrar shall pay two dollars into the state treasury to the credit of the state bureau of motor vehicles fund * * *, sixty cents into the state treasury to the credit of the trauma and emergency medical services fund * * *, sixty cents into the state treasury to the credit of the homeland security fund * * *, thirty cents into the state treasury to the credit of the investigations fund * * *, one dollar and twenty-five cents into the state treasury to the credit of the emergency management agency service and reimbursement fund * * *, and twenty-five cents into the state treasury to the credit of the justice program services fund.

> The information maintained by the Bureau of Motor Vehicles is largely available for free pursuant to a public-records request. Based on this, we are persuaded that the fee for a certified abstract is less related to the "registration, operation, or use of vehicles" than to the process of certification. The process of certification is useful, perhaps even necessary, to certain of the plaintiffs, but it is not necessary to the general motoring public. The production of certified abstracts cannot happen without the registration information maintained by the Bureau of Motor Vehicles. But we conclude that the fees for certified abstracts are not related to the registration, operation, or use of vehicles on public highways, because the vast majority of drivers and vehicles on the road are registered, operated, or used without the necessity of a certified abstract. Another way to think about it is that the fee for a certified abstract is not triggered by the registration, operation, or use of a vehicle on the public highways.

*Id.* at ¶ 16.

{¶ 18} Applying *Ohio Trucking* herein, we find that the financial responsibility reinstatement fee is directly related to an Ohio driver's non-compliance with the mandatory financial responsibility provisions of R.C. 4509.101. Unlike the CAT at issue in *Beaver Excavating*, 2012-Ohio-5776, which was levied on gross receipts from *all* sales of motor vehicle fuels, the reinstatement fee required by R.C. 4509.101 does not affect all Ohio motorists. Rather, as was the case in *Ohio Trucking*, not every Ohio motorist who registers a vehicle must pay the financial responsibility reinstatement fee. The reinstatement fee is necessary only for those motorists who have incurred the civil penalty under R.C. 4509.101(A). All other Ohio drivers merely pay the customary vehicle registration fee. *See* R.C. 4503.09 to 4503.181.

{¶ 19} As was the case in *Ohio Trucking*, an event unrelated to vehicle registration triggers the financial responsibility reinstatement fee. In this case, the lack of vehicle insurance triggers a civil penalty which includes a financial responsibility reinstatement fee. We note that in order to meet the requirements for reinstatement, a motorist who has incurred the civil penalty of suspension must first file and continuously maintain proof of financial responsibility under R.C. 4509.44 to 4509.65. R.C. 4509.101(A)(5)(c). Thus, it is evident that the financial responsibility reinstatement fee relates directly to the statutory purpose of compelling Ohio motorists to carry vehicle insurance and penalizing

those who do not, rather than to vehicle registration itself.  Although we cannot deny that there is a relationship between the financial responsibility reinstatement fee and motor vehicle registration, in light of the *Ohio Trucking* decision, we find that relationship is too attenuated to support the conclusion that the statutory allocation of the increased financial responsibility reinstatement fee violates Article XII, Section 5a, Ohio Constitution.  Applying the rationale of *Ohio Trucking*, we find that the financial responsibility reinstatement fee is less related to the registration, operation, or use of vehicles than it is to the civil penalty for non-compliance with Ohio's financial responsibility laws.

{¶ 20} Appellant contends that the decision in *Ohio Trucking* is distinguishable because the court based its ruling primarily on the fact that the information in the certified abstract was generally available to the public via a public records request. Because of this fact, appellant argues the court in *Ohio Trucking* concluded that the fee for a certified abstract is less related to the registration, operation, or use of vehicles than to the process of certification.

{¶ 21} We agree that the *Ohio Trucking* case arises under different facts than the present case.  However, we find that the rationale employed by the court in *Ohio Trucking* is more suitable to our analysis of the amendment at issue in this case and that we should interpret the term "relating to" more narrowly when it is applied to the increased financial responsibility reinstatement fee.  Moreover, any motorist who has incurred the civil penalty of suspension under R.C. 4509.101 has previously paid the required vehicle registration fee for the registration period.  No other registration fee is required of such motorists during the registration period.  Thus, the additional reinstatement fee is attributable exclusively to the failure to comply with the mandatory financial responsibility law and not the generally applicable vehicle registration requirements. Accordingly, we find that the financial responsibility reinstatement fee is less related to motor vehicle registration than it is to the civil penalty compelling compliance with Ohio's financial responsibility law.  Therefore, amended R.C. 4509.101(E), which credits the increase in the financial responsibility reinstatement fee to the indigent defense support fund, does not offend the spending restrictions in Article XII, Section 5a, Ohio Constitution.

{¶ 22} Because we have determined that the 2009 amendments to R.C. 4509.101 made by Am.Sub.H.B. No. 1 do not violate Article XII, Section 5a, Ohio Constitution, we need not address appellees' alternative argument regarding severability.  For the foregoing reasons, appellant's assignment of error is overruled.

## B.  Appellees' Cross-Assignment of Error

{¶ 23} In appellees' cross-assignment of error, they contend that the trial court erred when it determined that appellant had standing to challenge the constitutionality of R.C. 4509.101.  App.R. 12(A)(1)(b) and (c) provides that this court shall "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs * * * [u]nless an assignment of error is made moot by a ruling on another assignment of error."  Here, appellees' cross-assignment of error regarding standing is rendered moot by our ruling on appellant's assignment of error.  Having overruled appellant's sole assignment of error and having affirmed the trial court's judgment dismissing appellant's complaint, any error by the trial court with respect to standing did not prejudice appellees.  *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, ¶ 59-60 (because the court of appeals overruled relator's objections to the magistrate's dismissal of relator's mandamus action, court of appeals did not err by mooting relator's objections to the magistrate's ruling that relator did not have standing).  Accordingly, we need not pass on the merits of appellees' cross-assignment of error or appellant's motion to dismiss the cross-appeal.

{¶ 24} For the foregoing reasons, appellees' cross-appeal and appellant's motion to dismiss the cross-appeal are moot.

## V.  CONCLUSION

{¶ 25} Having overruled appellant's assignment of error and having determined that the cross-appeal is moot, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and BRUNNER, J., concur.

_____