[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Preterm-Cleveland, Inc. v. Kasich,* Slip Opinion No. 2018-Ohio-441.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-441

PRETERM-CLEVELAND, INC., APPELLEE, *v.* KASICH, GOVERNOR, ET AL., APPELLANTS; O'MALLEY, PROS. ATTY., APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Preterm-Cleveland, Inc. v. Kasich,* Slip Opinion No. 2018-Ohio-441.]

*Standing—Challenge to constitutionality of certain provisions of 2013 Am.Sub.H.B. No. 59, a biennial budget bill—Party challenging multiple provisions in an enactment of the General Assembly as violating the Single Subject Clause, Article II, Section 15(D), Ohio Constitution, must prove standing as to each provision party seeks to have severed from the enactment by demonstrating it suffered or is threatened with direct and concrete injury in manner or degree different from that suffered by general public because of each provision—Party lacks standing to challenge legislative enactment as violating the Single Subject Clause, Article II, Section 15(D), Ohio Constitution, if challenged provision applies to other persons but does not cause or threaten direct and concrete injury to party asserting challenge.*

*Reporter's Note: This cause was decided on January 24, 2018, but was released to the public on February 6, 2018, subsequent to the resignation of Justice William M. O'Neill, who participated in the decision.

(No. 2016-1252—Submitted September 26, 2017—Decided January 24, 2018.*)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 103103, 2016-Ohio-4859.

_____

**SYLLABUS OF THE COURT**

1. Because Preterm-Cleveland, Inc., has not proven it suffered or is threatened with direct and concrete injury from the passage of the 2013 state budget bill, it lacks standing to challenge the bill as violating the Single Subject Clause of Article II, Section 15(D) of the Ohio Constitution, and therefore, Governor John R. Kasich and the other state defendants are entitled to judgment as a matter of law.

2. A party challenging multiple provisions in an enactment of the General Assembly as violating the Single Subject Clause of the Ohio Constitution must prove standing as to each provision the party seeks to have severed from the enactment by demonstrating it suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the general public because of each provision.

3. A party lacks standing to challenge a legislative enactment as violating the Single Subject Clause of the Ohio Constitution if the challenged provision applies to other persons but does not cause or threaten direct and concrete injury to the party asserting the challenge.

_____

**O'DONNELL, J.**

{¶ 1} The challenges originally asserted by Preterm-Cleveland, Inc., in this case concern whether 2013 Am.Sub.H.B. No. 59, a biennial budget bill, violates the Single Subject Clause of Article II, Section 15(D) of the Ohio Constitution because provisions enacted or amended as part of the bill are allegedly unrelated to the state budget; however, the predicate issue before us concerns whether Preterm-

Cleveland, Inc., has standing to raise the alleged violations and whether it can seek severance of provisions in the bill that did not injure it.

{¶ 2} After review, we conclude that because Preterm-Cleveland, Inc., has not proven it suffered or is threatened with direct and concrete injury from the passage of the 2013 state budget bill, it lacks standing to challenge the bill as violating the Single Subject Clause of Article II, Section 15(D) of the Ohio Constitution, and therefore, Governor John R. Kasich and the other state defendants are entitled to judgment as a matter of law. Accordingly, we reverse the judgment of the appellate court and reinstate the judgment of the trial court.

{¶ 3} Governor Kasich, together with the state of Ohio, the Ohio Department of Health and its director, the Ohio Department of Job and Family Services and its director, and the State Medical Board appeal from a judgment of the Eighth District Court of Appeals that reversed a grant of summary judgment in their favor in an action by Preterm challenging certain provisions of H.B. 59 as violating the Single Subject Clause of the Ohio Constitution.

{¶ 4} Preterm, a state licensed ambulatory surgical facility that provides abortion services, filed a complaint in the Cuyahoga County Common Pleas Court against the parties who have appealed to this court and the Cuyahoga County Prosecuting Attorney asserting that provisions of H.B. 59 that it denominated as the Written Transfer Agreement Provisions (R.C. 3702.30, 3702.302 through 3702.308, and 3727.60), the Heartbeat Provisions (R.C. 2317.56, 2919.19 through 2919.193, and 4731.22), and the Parenting and Pregnancy Provisions (R.C. 5101.80, 5101.801, and 5101.804) are unrelated to the state budget and should be declared void and unenforceable.

### Written Transfer Agreement Provisions

{¶ 5} The Written Transfer Agreement Provisions require that an ambulatory surgical facility "shall have a written transfer agreement with a local hospital that specifies an effective procedure for the safe and immediate transfer of

patients from the facility to the hospital when medical care beyond the care that can be provided at the * * * facility is necessary," R.C. 3702.303(A), and also prohibit a "public hospital" from entering into such an agreement with a facility "in which nontherapeutic abortions are performed or induced," R.C. 3727.60(B)(1). They further require the facility to file a copy of the written transfer agreement with the director of health, R.C. 3702.303(A), update the agreement "every two years and file a copy of the updated agreement with the director," R.C. 3702.303(B), and notify the director of a modification "not later than the business day after the modification is finalized," R.C. 3702.307(A). In addition, they state that the director may not renew a facility's license unless the "most recent version of the updated written transfer agreement" on file is "satisfactory" or the director has granted a variance. R.C. 3702.302(C).

### Heartbeat Provisions

{¶ 6} The Heartbeat Provisions require that "[a] person who intends to perform or induce an abortion * * * determine whether there is a detectable fetal heartbeat * * *." R.C. 2919.191(A). Unless there is a medical emergency, "no person shall perform or induce an abortion * * * prior to determining if the unborn human individual * * * has a detectable fetal heartbeat." R.C. 2919.191(B)(1). "The person who performs the examination for the presence of a fetal heartbeat shall give the pregnant woman the option to view or hear the fetal heartbeat." R.C. 2919.191(B)(2). And "[t]he person who determines the presence or absence of a fetal heartbeat shall record in the pregnant woman's medical record" the test results and other information. R.C. 2919.191(A). These provisions also impose a record keeping requirement on "[a]ny person who performs or induces an abortion" pursuant to the medical emergency exception. R.C. 2919.191(B)(1). In addition, they mandate that "[i]f a person who intends to perform or induce an abortion" has determined there is a detectable fetal heartbeat, the person generally shall not "perform or induce the abortion" until 24 hours after informing the pregnant woman

4

in writing about the heartbeat and the statistical probability of bringing the unborn human individual to term. R.C. 2919.192(A)(1) and (2).

**{¶ 7}** The Heartbeat Provisions also provide for either a civil action for damages or disciplinary action for a failure to comply and make it a crime to violate their terms. Specifically, R.C. 2919.191(E) states that "[t]he failure of a person to satisfy the requirements of this section prior to performing or inducing an abortion * * * may be the basis for either" a "civil action for compensatory and exemplary damages" or "[d]isciplinary action" by the State Medical Board. And R.C. 2919.192(E) provides that "[w]hoever violates [R.C. 2919.192(A)] is guilty of performing or inducing an abortion without informed consent when there is a detectable fetal heartbeat, a misdemeanor of the first degree on a first offense and a felony of the fourth degree on each subsequent offense."

**Parenting and Pregnancy Provisions**

**{¶ 8}** The Parenting and Pregnancy Provisions created the "Ohio parenting and pregnancy program to provide services for pregnant women and parents or other relatives caring for children twelve months of age or younger," R.C. 5101.804(A)(1), and they permit the Ohio Department of Job and Family Services to offer TANF (federal Temporary Assistance for Needy Families) block grant funds to certain entities "not involved in or associated with any abortion activities," R.C. 5101.804(B)(5); *see* R.C. 5101.80(A)(4)(f); R.C. 5101.801(B)(3).

**Proceedings in the Lower Courts**

**{¶ 9}** All defendants moved to dismiss the complaint for lack of standing, and Preterm moved for summary judgment. The trial court denied the motions to dismiss, and the prosecutor then moved for partial summary judgment regarding Preterm's request for an injunction to prohibit enforcement of the Parenting and Pregnancy and the Written Transfer Agreement Provisions, alleging Preterm was "not subject to any threat of criminal prosecution" by the prosecutor pursuant to those provisions. The state defendants also moved for summary judgment,

asserting that Preterm lacked standing, and presented evidence that Preterm had not received TANF funds before the passage of H.B. 59, that in 2005, Preterm had executed a written transfer agreement with a private hospital, University Hospitals Cleveland Medical Center (then University Hospitals of Cleveland), with an automatic annual renewal provision, and that in 2013, it had entered a new agreement with that hospital that also contains an automatic annual renewal provision.

{¶ 10} Preterm submitted an affidavit from its Director of Clinic Operations, Heather Harrington, who averred that the Written Transfer Agreement Provisions in H.B. 59 caused Preterm to suffer "new administrative burdens," limited the number of hospitals with which it could contract, and placed its license "at greater risk of loss or revocation than before." Harrington also averred that the Heartbeat Provisions caused Preterm to "amend its policies, procedures, and protocols concerning informed consent," to undertake new record keeping burdens, and to "conduct extensive research" because Preterm "fears criminal prosecution and civil liability" if it does not comply with those provisions.

{¶ 11} The trial court granted the prosecutor's unopposed motion for partial summary judgment in connection with the Parenting and Pregnancy and the Written Transfer Agreement Provisions. It also determined Preterm had no standing to challenge H.B. 59, so all defendants were entitled to judgment in their favor on the remaining disputed claims. Thus, the court denied Preterm's motion for summary judgment, granted the state defendants' motion for summary judgment, and sua sponte granted summary judgment to the prosecutor with respect to the Heartbeat Provisions.

{¶ 12} On appeal, in a split decision, the appellate court left undisturbed the grant of summary judgment to the prosecutor regarding the Parenting and Pregnancy and the Written Transfer Agreement Provisions but reversed the trial court on the standing issue and remanded the case for further proceedings, stating

it was "abundantly clear and universally understood" that Preterm was "the intended target" of the provisions it challenged in H.B. 59. 2016-Ohio-4859, 68 N.E.3d 314, ¶ 23 (8th Dist.). It rejected the state's claim that the Heartbeat Provisions regulate physicians, not abortion clinics, because physicians "do not work alone" and "cannot and do not provide abortion services without the organized administration, real estate, and medical expertise of the clinic that provides abortion care, the clinic's staff, or its equipment." *Id.* at ¶ 24. The appellate court concluded Preterm had demonstrated that it changed protocols and procedures to comply with the Written Transfer Agreement and the Heartbeat Provisions "in order to avoid criminal prosecution, civil liability, or losing its [ambulatory surgical facility] license," and it held Preterm "established an injury in at least one of the provisions of [H.B.] 59, and it is the direct target of such legislation" and thus had "established standing to challenge the legislation" on single subject grounds. *Id.* at ¶ 25, 28.

{¶ 13} Judge Stewart dissented and expressed her view that Preterm had failed to establish it had standing to challenge the constitutionality of H.B. 59 because

it has not shown that it suffered any concrete or direct injury from the legislation. Most of what Preterm claims as injuries could only be suffered by potential patients and medical providers who perform abortions—persons who could have standing if they were parties to this action. To the extent that Preterm does allege that it has suffered an injury, the record is clear that those injuries have yet to occur and, even if they did occur, would not be direct or concrete.

*Id.* at ¶ 35 (Stewart, J., dissenting).

{¶ 14} The state defendants appealed, and we accepted the following proposition of law for review:

The Ohio Constitution requires plaintiffs to establish standing for each claim, so a plaintiff challenging several provisions in a bill on one-subject grounds must prove standing for each provision. To do so, a plaintiff must identify an injury that is both concrete and particularized and actual and imminent. A plaintiff therefore lacks standing to challenge laws that may never harm it, that it may satisfy merely by sending a document, or that apply only to different persons.

## Claims in the Supreme Court

{¶ 15} Governor Kasich and the other state defendants assert that in order to challenge a bill based on a violation of the Single Subject Clause and seek severance of its provisions, a party must have standing as to each offending provision, and they contend the appellate court adopted an erroneous rule of law in concluding Preterm could challenge the Parenting and Pregnancy Provisions that did not injure it. The state defendants also claim Preterm lacks standing to challenge the Written Transfer Agreement Provisions because it has had an agreement with a private hospital for over a decade and only speculates that the public hospital prohibition might harm it in the future, and Preterm's other alleged injuries are "not concrete." They further contend Preterm lacks standing to challenge the Heartbeat Provisions because those provisions regulate physicians, not abortion clinics, and therefore Preterm does not face a credible threat of prosecution from them and cannot claim standing to sue by voluntarily changing its practices.

**{¶ 16}** Preterm, on the other hand, believes it has standing to bring a single subject challenge to a bill if it is injured by any provision in the bill and may seek to sever any provision that destroys the bill's unity of subject matter, specifically contending it is the target of the Written Transfer Agreement Provisions, which have prevented it from relying on its automatically renewable 2005 agreement and impose new burdens on it to "negotiate, execute, and file with the state a new written transfer agreement every two years" in order to maintain its license. Preterm also asserts the requirement that it notify the director of health about agreement modifications is a new burden, and both the public hospital prohibition and the local hospital requirement reduce its "options for complying with the written transfer agreement requirement."

**{¶ 17}** In addition, Preterm claims the Heartbeat Provisions required it to amend its practices and protocols, conduct research, and undertake new recordkeeping burdens to avoid criminal prosecution and civil liability of itself and its physicians. Preterm asserts those provisions directly target it, noting they apply to "persons," which the Revised Code defines to include corporations; *see*, *e.g.*, R.C. 1.59(C). It also maintains it would be subject to organizational criminal liability pursuant to R.C. 2901.23(A)(4) if Harrington failed to conform its policies and protocols to the requirements of the Heartbeat Provisions. Preterm contends that these injuries provide it with standing to challenge H.B. 59 and entitle it to seek severance of all the provisions that have injured it and also the Parenting and Pregnancy Provisions, which it concedes did not injure it.

**{¶ 18}** The Cuyahoga County Prosecuting Attorney has submitted a brief asking this court not to disturb the grant of summary judgment in its favor with respect to the Parenting and Pregnancy and the Written Transfer Agreement Provisions, which is not contested in this appeal. We decline to address a ruling that is not challenged on appeal.

**Issue**

**{¶ 19}** The issue presented on this appeal is whether Preterm has standing to assert a Single Subject Clause challenge to H.B. 59 seeking severance of what it refers to as the Written Transfer Agreement, the Heartbeat, and the Parenting and Pregnancy Provisions of that bill.

**Law and Analysis**

**{¶ 20}** "The Ohio Constitution expressly requires standing for cases filed in common pleas courts." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 11. "Article IV, Section 4(B) provides that the courts of common pleas 'shall have such original jurisdiction over all *justiciable matters*.' (Emphasis added.) A matter is justiciable only if the complaining party has standing to sue." *Id.*

**{¶ 21}** In *Ohio Trucking Assn. v. Charles*, 134 Ohio St.3d 502, 2012-Ohio-5679, 983 N.E.2d 1262, this court stated:

> "In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury."

*Id.* at ¶ 5, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-470, 715 N.E.2d 1062 (1999).

**{¶ 22}** This record does not contain any evidence that Preterm has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general as a result of the Written Transfer Agreement Provisions; rather, Preterm offered unsubstantiated, conclusory averments about

those provisions creating new administrative burdens, limiting the number of hospitals with which it could have such an agreement, and placing its license "at greater risk of loss or revocation than before." And it only speculates that it might be injured by the provisions if University Hospitals does not renew its agreement with Preterm. Although a new law might impose administrative burdens that result in use of additional resources by a business, this record does not reflect that Preterm incurred or is at risk of incurring new expenses due to the Written Transfer Agreement Provisions.

{¶ 23} The facts in this case stand in sharp contrast to both *Ohio Trucking* and *Little Sisters of the Poor Home for the Aged v. Sebelius*, 6 F.Supp.3d 1225, 1235-1236 (D.Colo.2013), *aff'd on other grounds sub nom. Little Sisters of the Poor Home for the Aged, Denver, Colorado v. Burwell*, 794 F.3d 1151 (10th Cir.2015), *vacated and remanded on other grounds sub nom. Zubik v. Burwell*, ___ U.S. ___, 136 S.Ct. 1557, 194 L.E.2d 696 (2016).

{¶ 24} In *Ohio Trucking*, this court held the plaintiffs had standing to challenge a statutory amendment increasing the cost of certified abstracts of driving records from $2 to $5 because the parties stipulated the plaintiffs purchased over five million certified abstracts annually and therefore would collectively have paid about $15 million more in fees per year than they did pursuant to the old statute, and the parties stipulated that most of the information on the abstracts was available to the public for free.

{¶ 25} In *Little Sisters*, the United States District Court for the District of Colorado held that self-insured religious organizations and their third-party administrator had standing to challenge regulations implementing a requirement that group health plans provide women coverage for certain preventative contraception services without a copayment or deductible because the organizations had to complete a form to obtain an accommodation and evidence showed on average, an organization would spend about $41 in labor costs to

complete the form and a third-party administrator would spend about $44 in labor costs to process the form. There is no similar evidence of direct or concrete injury in this case.

**{¶ 26}** Regarding the Heartbeat Provisions, although Preterm presented evidence that it altered its conduct due to its fear of criminal and civil liability pursuant to those provisions, it neither suffered nor is threatened with a direct and concrete injury because of them. Preterm has not been prosecuted nor does it face a credible threat of direct prosecution from R.C. 2919.192 because that statute applies to persons who perform or induce abortions, R.C. 2919.192(A), and as Judge Stewart observed in her dissenting opinion, Preterm does not actually perform or induce abortions, so it cannot violate this statute. 2016-Ohio-4859, 68 N.E.3d 314, at ¶ 41. Furthermore, organizational criminal liability for a violation of the statute pursuant to R.C. 2901.23(A)(4) is dependent on the conduct of third party physicians against whom R.C. 2919.192 directly operates, and even if such an injury were sufficiently direct for standing purposes, there is no evidence physicians will perform abortions at Preterm in violation of the duties imposed on them by statute or were likely to do so in the absence of the changes Preterm undertook.

**{¶ 27}** Lastly, R.C. 2919.191 does not affect Preterm because it provides a possible civil action for the failure of a person to satisfy its requirements, R.C. 2919.191(E), and it imposes duties only on persons who determine the presence or absence of a fetal heartbeat and who intend to and do perform or induce abortions, R.C. 2919.191(A) and (B). None of these provisions apply to Preterm, and a party lacks standing to challenge a legislative enactment as violating the Single Subject Clause of the Ohio Constitution if the challenged provision applies to other persons but does not cause or threaten direct and concrete injury to the party asserting the challenge.

{¶ 28} Finally, regarding the Parenting and Pregnancy Provisions, Preterm concedes those provisions did not cause it any injury. Nonetheless, it seeks to have them severed from H.B. 59. Because Preterm has failed to establish standing with respect to any provision in H.B. 59 in that it has not evidenced a direct and concrete injury from any of its provisions, it is unnecessary to address whether Preterm can seek severance of any provision of H.B. 59 that did not injure it.

{¶ 29} However, even if Preterm had established standing with respect to either the Written Transfer Agreement or the Heartbeat Provisions, that standing would not permit it to seek severance of the Parenting and Pregnancy Provisions because a party seeking to assert a cause of action must establish standing as to each claim presented.

{¶ 30} The Supreme Court of the United States has stated standing " 'is not dispensed in gross.' " *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.E.2d 737 (2008), quoting *Lewis v. Casey*, 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), fn. 6. "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press' and ' "*for each form of relief*" ' that is sought." (Emphasis added.) *Id.*, quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006), quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.E.2d 610 (2000). Thus, a party challenging multiple provisions in an enactment of the General Assembly as violating the Single Subject Clause must prove standing as to each provision the party seeks to have severed from the enactment by demonstrating it suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the general public because of each provision. Otherwise the relief requested would not redress an injury of the party.

**Conclusion**

{¶ 31} Preterm has not demonstrated it has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general as a result of the enactment of H.B. 59, and therefore, it lacks standing to present a challenge to H.B. 59 on the basis of a Single Subject Clause violation or to seek severance of any part of the bill.

{¶ 32} No genuine issues of material fact exist, and Governor Kasich and the other state defendants are entitled to summary judgment as a matter of law, because Preterm lacks standing to raise the question whether certain provisions of H.B. 59 violate the Single Subject Clause of Article II, Section 15(D) of the Ohio Constitution.

{¶ 33} Accordingly, the judgment of the appellate court is reversed and the judgment of the trial court is reinstated.

Judgment accordingly.

KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion joined by O'NEILL, J.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 34} The majority's decision is unusual by any standard. The majority has failed to address one of the central arguments presented by appellee Preterm-Cleveland, Inc. ("Preterm"), ignored a basic point of law generally regarded as well-established and not controversial, and then, surprisingly, ignored a guiding principle of judicial restraint relied on by the majority in its opinion in a different case involving some of the same issues presented here. Each of these three problems materially impacts the result in this case. Together they form an opinion that fails to plainly apply the law to the facts before us. I therefore dissent.

## I. Heartbeat Provisions

{¶ 35} The Heartbeat Provisions at issue in this case generally require that before an abortion can be performed, the "person" who intends to perform that abortion must "determine whether there is a detectable fetal heartbeat of the unborn human individual the pregnant woman is carrying." R.C. 2919.191(A). If one is detected, certain information must be provided to the woman, and the abortion cannot be performed until "at least twenty-four hours have elapsed since" the information has been provided. R.C. 2919.192(A).

{¶ 36} The majority holds that Preterm has not been injured by these provisions, and therefore lacks standing to challenge them under the one-subject rule of the Ohio Constitution, Article II, Section 15(D), because it finds that the Heartbeat Provisions apply only to individuals who perform abortions, not to a clinic such as Preterm.

{¶ 37} The majority ignores Preterm's argument that the Heartbeat Provisions injure Preterm because Preterm is required by law to host a second appointment, and sometimes additional appointments, when a fetal heartbeat is detected. Importantly, this argument is relevant even if the majority is correct that the text of the Heartbeat Provisions applies only to individuals. I would find that the burden of facilitating and hosting additional appointments constitutes a concrete and particularized injury sufficient to give Preterm standing.

{¶ 38} Preterm presented the trial court with an affidavit of its Director of Clinical Operations, Heather Harrington, describing the impact of the Heartbeat Provisions on its work, and it was not contested by the state defendants. Before the Heartbeat Provisions were enacted, Preterm was able to provide its services in just a single patient visit. Although Ohio law contains other informed-consent provisions that imposed waiting requirements before a procedure could be performed, those provisions could previously be met by a patient through a visit to another physician; they did not require Preterm to host any appointments before the

date of the actual procedure. *See generally* former R.C. 2317.56(B), 2012 Am.Sub. H.B. No. 487. The Heartbeat Provisions changed that. Now, even under the majority's narrow reading of the Heartbeat Provisions, Preterm's agent is required to "determine whether there is a detectable fetal heartbeat," R.C. 2919.191(A), and, if a heartbeat is detected, wait at least 24 hours after certain information is provided before performing the abortion, R.C. 2919.192(A).

{¶ 39} The result is that whenever a heartbeat is detected, there must be a second appointment. In fact, as Preterm points out, in some cases there will need to be a third visit and perhaps more. Harrington described in her affidavit how these requirements create "logistical problems for Preterm's scheduling system and administrative staff":

> In some cases, a woman is now required to make an extra trip to Preterm in order to obtain an abortion, not only burdening Preterm's patients but also straining its staff's resources. If a woman comes to Preterm to receive an abortion and her first ultrasound does not detect a heartbeat, but a heartbeat is discovered when she returns for her procedure, she will have to be provided with the opportunity to see or hear the heartbeat at that visit. Shen must then return again at least twenty-four hours later for the procedure itself. This results in unexpected scheduling changes for both the patient and Preterm staff. In the case of a surgical abortion, it requires a total of three visits by the patient to Preterm, and in the case of a medical abortion, a total of five visits.

{¶ 40} One can easily see how these "logistical problems for Preterm's scheduling system and administrative staff" are a burden on Preterm. In order to provide its services, Preterm must consider numerous factors related to scheduling,

staffing, equipment, and the use of its facility. For example, it must take into account how many appointments are typically required for each patient seeking each type of service it offers, which staff members should be available for each appointment, how long each appointment will take, and any other services or equipment that will be needed for each visit. Preterm must also consider the various costs associated with these factors. Finally, Preterm must be able to accommodate unexpected changes to its scheduling. By requiring an additional appointment anytime a heartbeat is detected, the Heartbeat Provisions directly impact all of these aspects of Preterm's work, requiring Preterm to use more resources to provide its services.

{¶ 41} The Heartbeat Provisions therefore have a direct effect on Preterm, not just its staff. I would find that the impact of the Heartbeat Provisions on Preterm constitutes a sufficient injury to meet the requirements of standing. The majority's failure to address this point is error.

{¶ 42} The majority instead concludes that Preterm has not been injured because the Heartbeat Provisions do not apply to Preterm. I am not convinced, however, that the term "person," as used in the Heartbeat Provisions, applies only to individuals such as doctors and other staff members. Preterm has correctly pointed out that the Ohio Revised Code defines "person" to include corporations such as Preterm. *See* R.C. 2901.01(B)(1)(a)(i) (defining "person" as used in all provisions of R.C. Title 29 to generally include a corporation); *see also* R.C. 1.59(C) (" 'Person' includes an individual, corporation, business trust, estate, trust, partnership, and association"). The legislature may explicitly deviate from this definition when it wishes to do so, but with respect to the Heartbeat Provisions, it did not. *See Baltimore Ravens, Inc. v. Self-Insuring Emps. Evaluation Bd.*, 94 Ohio St.3d 449, 462, 764 N.E.2d 418 (2002) (Cook, J., dissenting) ("Because R.C. 119.01(D) does not define 'person,' the default definition of the term [in R.C. 1.59(C)] applies").

**{¶ 43}** Other courts have found standing for clinics to challenge laws forbidding a "person" from performing certain types of abortion procedures. In *Rhode Island Med. Soc. v. Whitehouse*, 66 F.Supp.2d 288 (D.R.I.1999), for example, the court found that a clinic had standing to challenge a law providing that "[n]o person shall knowingly perform a partial birth abortion." *Id.* at 299, 304. The state defendants assert that *Whitehouse* is not persuasive because a case it cited for the proposition that clinics have standing to challenge abortion restrictions lacked analysis. *See Planned Parenthood of Wisconsin v. Doyle*, 162 F.3d 463, 465 (7th Cir.1998) (stating that a clinic's standing to challenge a law prohibiting a "person" from performing a partial-birth abortion is "not open to question"). This is true enough, but the *Whitehouse* court nonetheless clearly supported its finding that the clinic had standing, specifically noting that the statute, the text of which used only the term "person," could be challenged by the clinic because the clinic acted through its "agents." *Whitehouse* at 304.

**{¶ 44}** As a result, I believe Preterm has sufficiently shown that it is plausibly included within the term "person" as used in the Heartbeat Provisions. Its conduct is therefore directly regulated and it faces a direct threat of criminal and civil liability if it does not comply with the challenged statutes. This is clearly sufficient for standing.

## II. Written Transfer Agreement Provisions

**{¶ 45}** The Written Transfer Agreement Provisions at issue generally provide that every ambulatory surgical facility ("ASF") "shall have a written transfer agreement with a local hospital" specifying a procedure for transferring patients from the ASF to the hospital when necessary. R.C. 3702.303(A). The provisions prohibit a "public hospital" from entering into a written transfer agreement with ASFs that perform nontherapeutic abortions. R.C. 3727.60(B)(1). They also require ASFs to file a copy of the written transfer agreement with the director of health, R.C. 3702.303(A), "update" the agreement "every two years and

file a copy of the updated agreement with the director," R.C. 3702.303(B), and notify the director of any modifications within one business day after the modification is finalized, R.C. 3702.307(A).

**{¶ 46}** It is undisputed that the Written Transfer Agreement Provisions apply to Preterm as an ASF. The question here is only whether the requirements placed on Preterm constitute a concrete and particularized injury.

**{¶ 47}** Preterm argues that although it had a written transfer agreement in place with a private hospital prior to the enactment of 2013 Am.Sub.H.B. No. 59 ("H.B. 59"), it has been harmed by the new requirement that it update its written transfer agreement every two years. Preterm argues that its prior agreement contained a provision providing for automatic one-year renewals. As a result, no action was required for Preterm to have the agreement in place and comply with the law as it existed before H.B. 59. Now, however, the Written Transfer Agreement Provisions require Preterm to negotiate and execute a new agreement every two years. Finally, Preterm also argues that it has been harmed by the new requirement that it "file a copy of the updated agreement with the director" every two years, R.C. 3702.303(B).

**{¶ 48}** The majority labels Preterm's evidence regarding these requirements as only "unsubstantiated, conclusory averments about * * * new administrative burdens," and it declines to accept Preterm's argument that the administrative burdens here forced it to use additional resources. Majority opinion at ¶ 22. The majority acknowledges that "a new law might impose administrative burdens that result in use of additional resources by a business," but it then takes the position that in order for Preterm's "use of additional resources" to constitute an injury for standing purposes, Preterm had to show that it "incurred or is at risk of incurring new expenses." *Id.*

**{¶ 49}** This holding is directly contrary to the basic and uncontroversial principle that an injury need not be economic in order to establish standing. As the

United States Supreme Court recognized over 40 years ago, "[i]t has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing." *Arlington Hts. v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *see also United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 686, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (stating that standing is "not confined to those who could show 'economic harm' "); *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("standing may be predicated on noneconomic injury"); *Frank v. United States*, 78 F.3d 815, 823-824 (2d Cir.1996), *vacated and remanded on other grounds*, 521 U.S. 1114, 117 S.Ct. 2501, 138 L.Ed.2d 1007 (1997) (noting that "it is familiar law that injury in the context of standing is not limited to economic harm" and finding that administrative burdens of compliance with a gun-control statute constituted injury for purposes of standing). For years, state and federal courts across the country have applied this principle without difficulty. The majority's decision to ignore this well-established principle and require Preterm to show economic harm to establish standing is remarkable.

{¶ 50} The Third Circuit's 2010 decision in *Lozano v. Hazleton*, 620 F.3d 170 (3d Cir.2010), *vacated and remanded on other grounds sub nom. Hazelton v. Lozano*, 563 U.S. 1030, 131 S.Ct. 2958, 180 L.Ed.2d 243 (2011), exemplifies the flaw in the majority's rationale. The plaintiffs in *Lozano* were required by a city ordinance to file an affidavit with their municipal government affirming simply that they did not knowingly employ individuals who lacked legal immigration status in the United States.[1] *Id.* at 177-178, 184, 186. The plaintiffs did not present evidence

---

[1] This is similar to the burden present in *Little Sisters of the Poor Home for the Aged v. Sebelius*, 6 F.Supp.3d 1225 (D.Colo.2013), *aff'd on other grounds sub nom. Little Sisters of the Poor Home for the Aged, Denver, Colorado v. Burwell*, 794 F.3d 1151 (10th Cir.2015), *vacated and remanded on other grounds sub nom. Zubik v. Burwell*, ___ U.S. ___, 136 S.Ct. 1557, 194 L.E.2d 696 (2016). The plaintiffs in that case were required to file a form to obtain an exemption from a government

concerning the monetary cost of creating or presenting the affidavit, but the Third Circuit found an injury sufficient to confer standing anyway. *Id.* at 186-187. Though the burden of creating the affidavit of compliance was "relatively small," it was "sufficient for standing purposes." *Id.* at 186.

**{¶ 51}** The state defendants attempt to distinguish *Lozano* by claiming that the plaintiffs in that case "had to do more than just submit an affidavit; they were required to investigate the work authorization status of prospective contractors." This attempt is not at all convincing. The lead plaintiff in the case was a landlord who occasionally hired contractors to perform repairs on his rental property. *Lozano* at 180. A landlord such as the plaintiff could have hired the same contractor for every repair—say, a relative or a childhood friend—and it would not have been a significant burden to investigate the work-authorization status of that relative or friend and then file an affidavit of compliance with the municipality. Rather than considering details of that type, the *Lozano* court found that the lead plaintiff had standing to challenge the ordinance under the Due Process and Equal Protection Clauses of the United States Constitution based on the burden the affidavit requirement placed upon him. *Id.* at 186-187.

**{¶ 52}** *Lozano* is consistent with the familiar precedent that an injury need not be monumental; it must only be "perceptible." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An injury can even be intangible. *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016) (" 'Concrete' is not * * * necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have

---

mandate. *Id.* at 1231-1232, 1235. Although the district court found that the plaintiffs had standing, *id.* at 1235-1236, the majority here mistakenly distinguishes that decision by pointing out that the plaintiffs had presented evidence of the economic cost of filing the form, thereby doubling down on its rogue position that economic injury is required. While cost evidence may quantify the injury suffered, it does not somehow enhance the magnitude of the injury, and it is not a necessary requirement that must be met in every case to establish standing.

confirmed in many of our previous cases that intangible injuries can nevertheless be concrete"). The important point is that whether the injury is large or small it must be "concrete and particularized." *Lujan* at 560.

{¶ 53} There is no reason to depart from the well-established and uncontroversial principle that an injury need not be economic in nature in order to confer standing. The majority's insistence on doing so is a clear mistake. Rather than follow this misguided approach, I would find that Preterm has suffered an injury under the Written Transfer Agreement Provisions because it is now required to update its agreement every two years and file a copy with the state. The burden of these requirements is at least as heavy as that present in *Lozano*. Though "relatively small," it is sufficient to confer standing. *Lozano* at 186.

{¶ 54} In fact, business owners across Ohio understand the nature of the burden here. It is not uncommon for businesses to rely on stable relationships with certain suppliers or service providers based on terms that do not change from year to year. Within the medical context, for example, a private hospital or a doctor's office may rely on a steady supply of gauze, regular maintenance for its equipment, or a license for software on its computer systems. Because of the ongoing nature of these basic needs, businesses sometimes choose to enter into automatically renewing contracts, rather than fixed-term contracts that require time and attention to renew on a regular basis. Importantly, they do so because they find them to be more efficient—and they find renewing contracts to be a burden. If the owner of a hospital or a small doctor's office who chose to utilize automatically renewing contracts for the services described above were suddenly barred from that practice, she would no doubt find it to be a burden to have to enter into the same agreement over and over again. Yet that is exactly what the majority finds to be no burden at all in this case. The only difference here is in the service that Preterm provides and the type of service agreement it must update, and there is no reason why Preterm's

standing should be judged differently from any other medical provider or business based on those facts.

{¶ 55} For these reasons, I would find that H.B. 59's requirement that Preterm update its written transfer agreement every two years and file that agreement with the state is a "concrete and particularized" burden sufficient to confer standing. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130, 119 L.Ed.2d 351.

### III. Parenting and Pregnancy Provisions

{¶ 56} The Parenting and Pregnancy Provisions at issue create a program providing services for pregnant women and individuals caring for young children, and they permit the use of block grants from the federal government for this program by certain entities. R.C. 5101.804(A)(1) and (B). Entities "involved in or associated with any abortion activities" are not permitted to receive these funds. R.C. 5101.804(B)(5); *see also* R.C. 5101.80(A)(4)(f); R.C. 5101.801(B)(3).

{¶ 57} Preterm concedes that these provisions do not cause it any injury because it has neither sought nor received any such funds in the past and it is not likely to do so in the future. The majority recognizes this, and it recognizes that because it holds Preterm has not been injured by the Heartbeat Provisions or the Written Transfer Agreement Provisions "it is unnecessary to address" an additional argument made by Preterm concerning its one-subject challenge. Majority opinion at ¶ 28. That argument would need to be considered only if the court had found an injury under at least one of the challenged provisions. At this point, then, traditional principles of judicial restraint call for the majority to go no further. Not content to leave the matter there, however, the majority goes on to decide the one-subject issue anyway.

{¶ 58} The one-subject clause of the Ohio Constitution, Article II, Section 15(D), provides that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title." Generally speaking, a law violates the one-subject rule when "various topics contained therein lack a common purpose or relationship

so that there is no discernible practical, rational or legitimate reason for combining the provisions in one Act." *Beagle v. Walden*, 78 Ohio St.3d 59, 62, 676 N.E.2d 506 (1997); *see also Capital Care Network of Toledo v. Ohio Dept. of Health*, ___ Ohio St.3d ___, 2018-Ohio-440, ___ N.E.3d ___, ¶ 65-77 (O'Connor, C.J., dissenting) (discussing history and purpose of one-subject rule).

{¶ 59} Preterm argues that even though it has not suffered an injury under the Parenting and Pregnancy Provisions, it can proceed with its one-subject challenge as long as it shows injury under one of the other sets of provisions. The state defendants argue that Preterm must show an injury from each of the three sets of provisions in order to have standing to obtain severance of those provisions.

{¶ 60} Seemingly agreeing with the state defendants, the majority declares that "even if" it had found an injury under the Heartbeat Provisions or the Written Transfer Agreement Provisions, it would nonetheless reject Preterm's argument in this regard. Majority opinion at ¶ 26. Significantly, the majority announces a new rule for one-subject challenges in Ohio:

> [A] party challenging multiple provisions in an enactment of the General Assembly as violating the Single Subject Clause must prove standing as to each provision the party seeks to have severed from the enactment by demonstrating it suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the general public because of each provision. Otherwise the relief requested would not redress an injury of the party.

*Id.* at ¶ 30. The majority even states the point as syllabus law. *Id.* at paragraph two of the syllabus.

{¶ 61} The majority simply does not need to address this issue. In fact, there is more than a little irony in the majority dropping the gavel on this issue

24

given its profession of allegiance to the principles of judicial restraint in *Capital Care Network*, which involves a nearly identical one-subject-clause challenge to the Written Transfer Agreement Provisions of H.B. 59. After deciding the necessary issues in *Capital Care Network*, the majority opinion declines to address others, quoting then Judge John Roberts on judicial restraint: " '[I]f it is not necessary to decide more, it is necessary not to decide more." ' *Id.*, ___ Ohio St.3d ___, 2018-Ohio-440, ___ N.E.3d ___, at ¶ 31, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment). If the majority adheres to this principle in *Capital Care Network*, it should do so here as well.

{¶ 62} Because I believe Preterm has suffered an injury under both the Heartbeat Provisions and the Written Transfer Agreement Provisions, I would go on to consider this argument. Given the majority's disposition of this case, I will state my views only in summary form.

{¶ 63} Preterm argues that the unity of purpose of H.B. 59 has been broken by the presence of the Heartbeat Provisions, the Written Transfer Agreement Provisions, and the Parenting and Pregnancy Provisions. As it alleged in its complaint:

> H.B. 59 addresses at least four distinct topics, serving four distinct purposes: (1) budget and appropriations; (2) regulation of abortion and abortion providers; (3) regulation of health care facilities; and (4) creation of a new parenting and pregnancy support program.

{¶ 64} I believe that Preterm has established that it has suffered an injury sufficient to enable it to proceed in its one-subject challenge arguing that these abortion-related provisions depart from the primary purpose of the budget and

25

appropriations bill. I would therefore affirm the judgment of the Eighth District Court of Appeals and remand the cause so that the trial court could further consider the merits of the challenge and determine the appropriate remedy if it finds a violation of the one-subject rule.

{¶ 65} The majority's new syllabus statement of law highlights the dangers of deciding too much. In particular, the majority's use of the vague term "provisions" in paragraph two of the syllabus is problematic. While Article II, Section 15(D) of the Ohio Constitution requires the focus to be on whether a bill contains more than one "subject," the majority has casually introduced the term "provisions," without any definition. This change will create more problems than it solves.

{¶ 66} For these reasons, I dissent.

O'NEILL, J., concurs in the foregoing opinion.

_____

Case Western Reserve University School of Law and B. Jessie Hill; Kohrman Jackson & Krantz, L.L.P., Susan O. Scheutzow, and Justine Lara Konicki; American Civil Liberties Union of Ohio Foundation, Elizabeth Bonham, and Freda J. Levenson; Elise Porter; and Roger Baldwin Foundation of ACLU, Inc., and Lorie A. Chaiten, for appellee Preterm-Cleveland, Inc.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Stephen P. Carney, Deputy Solicitor, and Ryan L. Richardson and Tiffany L. Carwile, Assistant Attorneys General, for appellants.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for appellee Michael C. O'Malley, Cuyahoga County Prosecuting Attorney.

_____